## Billow v. Metzger

6

*Samuel DiFrancesco*, for plaintiff.
*John Taylor, Freemont McKenrick* and *Andrew D. Gleason*, for defendants.

O'KICKI, *J.*, November 7, 1978 —

## FINDINGS AND ORDERS

From the undisputed pleadings and the testimony, the court makes the following findings:

1. Plaintiff, Andrew Billow, Jr., is the Prothonotary of the Court of Common Pleas of Cambria County, Pennsylvania, having been duly elected to such position in the general election of 1975 for a term of four years.

2. Defendants, T.T. (Ted) Metzger, Donald Templeton and Joseph P. Roberts, are the Commissioners of the County of Cambria having been duly elected as such also in the general election of 1975.

3. Defendant, Robert McCormick, is the County Controller of Cambria County, Pennsylvania, also having been elected to such office in the general election of 1975.

4. Plaintiff employed Carla J. Connelly of 1419 Jefferson Avenue of the Borough of Portage, County of Cambria and State of Pennsylvania, as a temporary replacement clerk in his office to discharge the duties as such, to be paid on a per diem basis.

5. The county commissioners above named as well as the county controller, failed and refused to acknowledge such appointment or to approve the payment of the per diem salary of such employee as hired by the prothonotary, effective June 7, 1978.

6. The budget for the year 1978 for the Office of Prothonotary, as approved by the Cambria County Commissioners provides that the sum of $1,000 can be utilized by the Prothonotary for the hiring of per diem employees.

7. Section 1620 of the County Code, Act of 1955, August 9, P.L. 323, (16 P.S. §1620) as amended by the Act of June 29, 1976, P. L. 460, no. 115, §1, provides that the salaries and compension of all appointed officers and employees who are paid from the county treasury shall be fixed by the salary board.

## DISCUSSION

The issue in this case is whether a prothonotary of a fourth class county may hire a replacement employee for his office without the prior approval of the county commissioners or the salary board.

The facts giving rise to this issue are contained in the complaint in mandamus and answer filed thereto. The prothonotary employed Carla J. Connelly as a clerk in his office on a per diem basis effective June 7, 1978. By letter to the salary board, comprised of the three county commissioners, county controller and prothonotary, he indicated that he had a need to hire this employee on a per diem basis in order to replace an individual who was on leave of absence and to replace other employees who were on vacation. The salary board tabled the prothonotary's application and sought an investigation as to whether or not this employee could be

hired under the Comprehensive Employment Training Act (CETA).

Only the county commissioners hire the CETA people. Under the criteria adopted by Cambria County in 1978, an applicant for the summer CETA program must have been out of school for a period of seven days; attending a college or other school of higher training; and first preference for such jobs was given to those families in the lower income criteria. The employee in question, Carla J. Connelly, did not apply for the CETA program, but did apply on March 9, 1978 for regular county employment. An application for such employment was processed with the county personnel office. No further action was taken on that application until the prothonotary sought to hire the young lady for work in his office.

There is no dispute that the salary board has determined by prior resolution that the rate of pay for all county per diem employees is $18 per day. There likewise is no dispute that the budget request from the prothonotary for the year 1978 contains the sum of $1,000 to be used for the hiring of per diem employees. The county commissioners have failed and refused to acknowledge the appointment or to direct the personnel office to make payment of the per diem salary. The salary board likewise has refused to pass a resolution officially placing the employee on the county payroll at the previously established rate of $18 per day.

It is the position of the prothonotary that he has the sole right and duty to hire clerical employees for the proper administration of his office. He cites the Act of 1875, March 18, P. L. 25 §2 (17 P.S. §1831) which provides as follows:

"Whenever necessary, it shall be the duty of the Prothonotary, District Attorney and Clerks of the several courts to appoint or detail such clerks or

deputies as shall enable the several judges to properly dispose of the business before their respective courts."

It is the position of the county commissioners and the county controller that the prothonotary does not have the legal authority to hire and fix the compensation of any clerk in his office without the approval of the county salary board, citing the County Code, Act of 1955, P. L. 323, §§1620 and 1623 (16 P.S. §1620 and §1623).

From this court's findings, the employee is a replacement employee and thus the number of employees is not increased or decreased. The next question is that the per diem salary rate has already been established by the county commissioners for all employees including those in the prothonotary's office, and, thus, the fixing of salary is not in issue.

The true issue is whether the county commissioners can hire the replacement employees through its participation in the CETA program or whether the prothonotary has the absolute right to hire a replacement employee within the limits of his budget, which had been previously approved by the county commissioners.

In 1976, the Pennsylvania Legislature amended the County Code. In the Act of June 29, 1976, P. L. 460, §1, they provided that . . . "The County Commissioners shall in no way affect the hiring, discharging and supervising rights and obligations with respect to such employees as may be vested . . . in other County officers." The state legislature thus made it abundantly clear that the supervisory authority of the office of prothonotary is vested in the prothonotary — and not in the county commissioners nor the salary board.

The Pennsylvania State Legislature has again spoken on this particular subject matter by its en-

actment of the Judicial Code as amended by the Act of April 28, 1978 and effective June 29, 1978. Subchapter B, Sections 2731 through 2738 of the Judicial Code relates to the powers and responsibilities of all prothonotaries in each and every county in this Commonwealth. Specifically, §2735 provides as follows:

"(c) Compensation and duties.—The prothonotary, except as otherwise provided by statute or home rule charter or optional plan of government, may fix the compensation and duties of the staff of the office of the prothonotary. Where the compensation of the staff of the office of the prothonotary is fixed by a county salary board, the prothonotary shall be a member of the salary board for such purpose."

From a proper reading of the respective sections of the county code which relate to the salary board, to the powers of the county commissioners, and to the powers of the prothonotary, together with the cases decided under those respective sections of law, it is abundantly clear that the prothonotary of a fourth class county has the power to hire, discharge and direct the work of the respective people in his office.

This power has been expanded by the 1976 Amendment to Section 1620 of the County Code and has been reiterated by the enactment of Section 2735 of the Judicial Code.* It is evident from the

---

*This interpretation is consistent with the reasoning of the Supreme Court handed down on July 14, 1978, Bradley v. PLRB, et al, 366 January term, 1977; Costigan v. Local 696, AFSCME, 462 Pa. 425; Ellenbogen v. County of Allegheny, filed July, 1978; Sweet v. PLRB (II), filed July, 1978; and Bucks County Board of Judges v. Bucks County Commissioners, filed July, 1978.

pleadings and from the testimony that the issue in this case is the right to hire a replacement employee in the office of the prothonotary. Neither the county commissioners, acting through a funding program called CETA, nor the salary board has any authority to hire employees for the office of prothonotary. The number of employees has not been changed by this action of the prothonotary and the salary, as has been found by this court, has been previously determined by prior action of the salary board.

Therefore, we conclude that the county commissioners and the county controller are acting contrary to law in refusing the request of the prothonotary to hire Carla J. Connelly as a replacement employee in the office of the prothonotary of Cambria County.

Accordingly, we grant the writ in mandamus.